a Florida corporation, Good Shepherd Hospice, Inc., a Florida corporation, Good Shepherd Yes, Your Honor. I please the Court, Tillman Finley, on behalf of the appellant and relator in this matter, Nancy Chase. At issue in this case is the appropriate interpretation and application of this Court's ruling in United States X-ray Clawson v. Laboratory Corporation of America, setting out the pleading standard required of a complaint brought under the False Claims Act, specifically as it relates to allegations of the submission of a false claim to the government. Mrs. Chase, who is a licensed clinical social worker who had been employed by Lifepath Hospice for a period of about 20 years and served in various positions for Lifepath and on various committees, both for Lifepath and for a group of defendants, corporate defendants, that provided hospice services, and that is services to patients who are supposed to be terminally ill and near the end of their lives. In the complaint, Ms. Hospice alleged that the hospice providers had admitted and retained patients knowing that they did not qualify for the Medicare hospice benefit and did not comply with various provisions of the regulations. Do you agree that the pleading standard of Rule 9 applies here? Yes, Your Honor. This Court has certainly held that Rule 9 applies, as does Rule 8, to a claim under the False Claims Act. Is there anything in the complaint, in the Fourth Amendment complaint, that indicates that anybody made a false claim? Yes, Your Honor. Where is it? What part of the Fourth Amendment complaint says that? Okay. So in the Fourth Amendment complaint... Give us the paragraphs and the line. Okay. The paragraphs, there are a number of allegations that pertain to the submission of false claims. No, no. Allegations saying on a certain time, certain place, somebody made a false claim. There is not an allegation of a particular date that a claim as to... All right. Let's have a false claim with regard to a patient. Okay. Yes. Is there any of that? Yes, sir. All right. Which paragraph? There are allegations in paragraphs 62 to 66 that describe discussions of specific patients in... No, no. Not discussions. An allegation, affirmative allegation that the false claim was presented. You don't have a date, but you... Yes. I assume you would have... Yes. ...the subject matter of a specific claim. Yes. 62 and 66 talk about discussions about the patients, followed by the allegation that... That's the judge's point. There's these discussions and there's these general allegations, but there's no specific fraudulent claims governed by date, time, place, etc., which Rule 9 requires. Respectfully, Your Honor, this court's precedent does not require that. In fact, Claussen expressly says, because in Claussen, and just a little bit of the procedural background... Yes. ...Cooper v. Blue Cross Blue Shield of Florida from 1994, it seems to specifically require the type of detail under Rule 9 in a false claims act that I just mentioned. Well, I can move back to Cooper in a moment, but I do want to be clear what Claussen says, Your Honor. In fact, there was a dissent in Claussen, because the majority of the panel in Claussen said, hey, this competitor of LabCorp has made these allegations and he hasn't identified any date, time, amounts, patients, etc., for any claim that was submitted to the government. And all these basically is a general conclusory allegations that, well, they should have been submitted. The dissent had taken issue with that as suggesting that that amount of detail was actually required in order to state a claim. And the majority panel said, no, no, no, no, and a footnote, this is footnote number 21, we're not saying that's required in every case. We are saying that this is one way that the relator in this case could have met the pleading allegation but did not. And, in fact, the court's subsequent authority has been clear that that level of detail is not required. The Mastich case specifically says it, despite the lack of any detail about specific claims being submitted to the government. This court reversed a district court dismissal in that case. The same facts are present in Hill v. Morehouse and in Walker v. R&F properties where the court affirmed, in that case, an order denying a motion to dismiss. With respect to Cooper, Judge Murphy, I think Cooper is similarly situated and Clawson was, of course, citing Cooper in its decision. And certainly that's informative and that is, in fact, the standard that is required in some circuits. For short term, an exemplar, including the Sixth Circuit, requires that level of detail in order to state a claim. The Eleventh Circuit, though, has been clear that, well, that certainly will do it. It's not absolutely required. And the district court in this case took Clawson and said, well, Clawson requires all this detail about the actual billing submissions and it requires it based on personal knowledge. And that interpretation of the pleading standard would change the standard that this court has applied since Clawson and convert the Eleventh Circuit standard to something much more akin to what is present in the Sixth or the Fourth Circuit in the minority position. I thought that was the Eleventh Circuit standard. I mean that was decided by this court in 1994. You want us to create a circuit split? There's already a circuit split, Your Honor. Just add to it then. The circuit split is understood and has been understood in briefing to the Supreme Court, is the Fourth Circuit, Sixth Circuit, and Eighth Circuit on one side. That's effectively requiring exemplars of claims in the complaint, no exceptions. And we're on the other side. And the Eleventh Circuit, Fifth Circuit, D.C. Circuit, Ninth Circuit, Seventh Circuit, First Circuit are all on the side of that is not absolutely required in every case. And in here, in fact, what Clawson said, actually said, was required and the relator could not provide in that case, was some indicia of reliability for the conclusion that claims were submitted to the government. And in this case, we have alleged... I don't quite understand. Clawson laid out what we all agree on, and that was my first question, that 9b applies to False Claims Act allegations. And it seemed to me that Cooper simply refined the standard by saying you've got to state acts, where they occurred, who engaged in them, time, place, substance of the alleged fraud, things of that nature. Yes, and that's an important distinction. You have to allege those particulars of the fraud. Not necessarily the false claim itself, which is a component, overall component of the fraud. What you've got to do, and the case law everywhere except the Fourth, Sixth, and Eighth Circuit has been consistent on this, is you've got to state some reason for believing that these things ultimately got submitted to the government. And in this case, we would submit that there is ample indicia of reliability based on the allegations that 80% of the patients... You didn't allege any conspiracy claims either, did you? Yes, yes we did. Count 3 is a conspiracy. That's just a way of holding somebody vicariously liable, so it doesn't make any difference. Well, actually... If you didn't state the substantive claim, it doesn't matter whether it was a conspiracy. In a ordinary... We're not dealing with a criminal, in a criminal context where you can have a conspiracy without the substantive offense being carried out. Actually you can, because this invokes, there's a separate statutory... Is there a cover-up for a conspiracy and no false claims? Yes, there's a... Oh my. Plaintiff's lawyers ought to just file all of them under conspiracies. The heck would they file them under false claims? It's only False Claims Act because there is a separate statutory provision that creates the conspiracy cause of action. And we cite the precedent here. We understand that, but you've got to have the false claims. Not for a conspiracy count. And we cite the precedent in our brief for that. Why don't you drop the rest of them and just have a conspiracy count and say we don't need to prove false claims? Well, we think we can prove false claims and ultimately we're going to have to prove that anyway in order to figure out the damages. But the real issue is that you have a count in your complaint that states conspiracy, but you didn't allege an agreement with particularity because you didn't have any of the specificity required by Rule 9 in the false claim, right? Well... I mean that's what the district judge found. And the district judge was wrong about the requirement of a false claim for a conspiracy count. And that's as cited in our brief on the conspiracy count. The gross case out of the Fifth Circuit clearly holds that there's no false claim requirement for... I'm right back. I don't know why in the world you'd ever allege anything but conspiracy. Well, I think for a number of reasons, Your Honor, and you need to do that because you're still going to have to identify what the damages are that are recoverable. You can just take all the claims they submitted and lump them together and say that's the damages. But you'd still have to prove which ones were, in order to recover them, which ones should have been paid. But you haven't alleged which ones shouldn't have been paid in this case. There's not one patient, one claim, one patient that should not have been paid. We do, we have allegations of a patient who's out of the country. That's in the complaint. We have allegations of specific patients who were being referred from one of the referral defendants, JSA, that were dictated to be... We're going to keep them, we're not going to retain them, irrespective of Medicare eligibility, and that those claims were submitted. Mr. Miller, before you sit down, so Section 3729A1A is presentment? Correct. And then 3729A1B is the makes or uses types claims. And you did not organize your complaint that way. Do you have any tips for me for viewing your complaint in that framework? Yeah, so the presentment, the way the presentment would work, as is alleged in discussing the regulatory framework, is that these patients receiving the hospice benefit would, are billed on a per diem basis. So you basically put in, these are the people who are on a roster, per diem date, these levels pay us. And then there's separate allegations about the conduct that goes into creating the scenario by which patients are admitted and retained without eligibility or beyond their eligibility. And then we break out the specific allegations about particular documentation. The documentation that would go to the makes or uses subsection of the statute. The patient records in terms of the documentation of patient visits and how the patient's condition is described. The written plans of care, which were a unique product of the Medicare regulations that are required. And here were not complied with and modified or altered after the fact to conceal the non-eligibility and non-compliance with the requirements. So, yeah. I think that answers my question. Thank you. You saved some rebuttal time. Mr. Lang. May it please the court, Joseph Lang from Carlton Fields in Tampa. I'm representing the hospice defendants and with permission of the court, I would take 10 minutes. Mr. Hallward-Dremeier is representing the referral defendants and he would take five minutes. And counsel for all of the independent, all the individual defendants are in the courtroom but are not planning to argue. There is a long line of cases from this court. Cooper, but certainly Claussen to Jalali that emphasizes the importance of the 9B standard and the particularity of pleading because the submission of a false claim is the sine qua non of a false claim act claim. In this case, you just heard my colleague basically concede, it seems to me, that there is nothing in this complaint that sets out specific details of an actual claim that was made. Let me ask you about that. Just help me with your view of this complaint. So paragraph 116, for example, in one specific instance, a patient traveled out of the country for three weeks but was never discharged from LifePath. LifePath then billed Medicaid for care provided to this patient even during his three-week absence from the service area. What else needs to go into that paragraph to make it survive in your view of the False Claims Act? That is a conclusion as to the billing, but there is nothing in this complaint to indicate. No, no, no, but just tell me. I mean, what do you have to have? Oh, I think at a bare minimum, there's not a single case from this court where the relator did not have knowledge of actual billing practices. Okay, so you have to have an invoice number? Well, that's worse than, I mean, that's the same thing that your opponent's saying. When the judge wants to know what specific things you would argue should be submitted to make the claim valid. In this case, I think you need to actually have specifics about the claim because under your mass stash case... But just say, if you don't mind, if you would stay focused on this claim. I mean, he says there's this patient who did this thing, which resulted in Medicaid being billed for three weeks when the patient wasn't receiving any services. What else needs to go into that paragraph to make it survive in your view of the False Claims Act? I think that the relator needs to have some knowledge of the billing practices because, Your Honor, the claim needs to say what services were provided, whether they were necessary, unnecessary, whether there was miscoding. These are all things in Mass Stash that the Mass Stash Court says that these are things that need more particularity. If it is what services were provided or if unnecessary services were provided. Those are the types of things that would have to be in this gentleman... If the patient wasn't even there and Medicaid's getting billed for it, then, I mean, wouldn't the answer be whatever Medicaid was billed for? Well, you would need to know particularly the patient's name. You would need to know what was being billed for. So, no name, the claim fails? In this circumstance, I think you need to identify who that is. I think you need to have particulars as to what services were provided. You need to have specifics as to a claim, not just a blank allegation that a claim was submitted for an unknown patient at an unknown time by a relator that the complaint reveals has no knowledge of billing practices of this. I mean, the only four cases I'm aware of that fall outside the mainstream of this court's precedent, which is Claussen, Corcio, Adkins, all of those cases are pretty strict about the specificity that needs to be alleged. There are four cases that allow a claim to proceed, but all four of those relators have actual knowledge of billing practices. Like the president of the corporation or vice president or the treasurer or something. Right, and sat in on... Who's intimately involved in the billing practices. Yes, Your Honor, sat in on billing meetings. But my problem here is, I just speak for myself, she's so far removed from all of that in this kind of setting. Correct. Is it your position that false claims can only be brought by the president of a corporation or vice president of a corporation? No, Your Honor, and certainly your own cases show that's not true. But you have to be in a position where you have actual knowledge of billing practices. This woman is extremely far removed from having knowledge of billing practices, and they essentially say that in their own brief. And so this is not a nuanced case-by-case advancement of the law that they're asking for. This is a major jump from anything this court has in its precedent based on how far removed this woman is from having any knowledge of billing practices. And she is basically asking you to do an inference, a logical leap, that because I've identified some allegedly improper practices, there would be no reason that they would not have billed. And this court's precedent says that that is not a proper inference, that we will not assume that. We will not presume that. In the Hopper case, it was inescapable, allegedly, that if this scheme happened, that a false claim was presented. But the relator couldn't give any billing knowledge to show that that was true, just alleged it was inescapable that if this scheme happened, there'd be no reason not to present the claim. And this court said that's not enough. We will not infer. We will not presume. We will not assume that a false claim was presented. You need to have specifics. You need to have a reliable indicia. And nobody in this relator's position has ever been able to do that. I have, you know, part of an oral argument is to let you hear from me what I find sympathetic about the other side's case and have you tell me. So, having been a district judge and having had these seal, key tam cases on my docket for five years, I totally understand the instinct of the district judge to say, I'm tired of all these amendments. I don't want to see this case anymore because, you know, we have to report cases that are older than three years. Having said that, I am sympathetic to the argument that they should have been allowed to amend one time after the complaint became public and therefore subject to adversarial testing. Why am I wrong about that? OK, there are a few ways I can respond. First, they never asked to amend through a motion. They never told the district judge what they would actually do in an amendment. There was never a proposed complaint provided. So, there wasn't a motion to amend. There wasn't ever an explanation of what we could do to amend. Never a proposed complaint. But even beyond those reasons, Your Honor, the law hasn't changed. I mean, the law is a pretty straight line from Claussen to Jalali last year. That's a futility argument. I mean, is that what you're... Well, I think it is futility, but I also think it's not an abuse of discretion to look. I think the judge used that argument to say that you have amended four times here. Again, before adversarial testing. Before adversarial testing, but that's where the no change in the law comes into play. If the law was in flux or if this district judge made a major leap that would have been surprising to this relator, then maybe you could find an abuse of discretion. That sounds like a futility argument. You seem to not react well to that. Is it not a futility argument? I'm fine with it being a... I think we prevail on futility. I think the way the judge arranged his reasoning in the order. He arranged this reasoning as I was exercising my discretion. I also find it to be futile. So, I think the orders arranged the way I'm presenting it, but I don't disagree. Corsillo says an amendment needn't be allowed, one, if there was undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies. Probably not. Second, where allowing amendment would cause undue prejudice to the opposing party. Not argued. Three, where amendment would be futile. Maybe, maybe not. I just don't see how demonstrating failure to attach a copy of the proposed amendment, failure to move, or the first amendment after unsealing violates any of the provisions of the Corsillo case. Unless it is futility, and I don't think a fine point has been put on that argument. I think it is futile, but I also would refer your honor to the Atkins case where a discussion of failure to give leave to amend also is at the end of the decision. And that's where these ideas of never asking for leave to amend, not giving a proposed complaint, not telling the district judge how it would be fixed. And candidly, in the briefing here, having not told this panel how they would fix it. I mean, there's no explanation of what we would do. And in fact, on page one of their brief, they say that it's an impossible pleading standard. And obviously other cases show it's not impossible, but it may be impossible for their relator. And they say it's impossible. And I see my time is up. I think we got your point. Thank you. We would ask that you affirm. Thank you, your honor. May it please the court, Doug Hallward-Dremeier on behalf of the four referral defendants. The deficiencies that Mr. Lange has already identified are even more stark with respect to the four referral defendants. Three of whom were not even added to the complaint until the fourth amended complaint some six years after the initial filing. Not a single patient who was referred by any of the referral defendants is identified in the complaint at all. Much less identify a single patient whose care was paid for by Medicare and Medicaid, but who was ineligible for the care for which they were billed. And there is no indicia of reliability that this relator has any basis to know any of the things about which she's speaking about the referral defendants. She was not an employee of the referral defendants by the time the statute of limitations period begins. Again, three of the four aren't even added until 2016. So anything before 2010 is irrelevant. By 2009, she's already been demoted to a line social worker at LifePath. There's no allegation she has any insight into the activities of the referral defendants after that time. And the theories of kickbacks that are spun in the complaint, and of course this is all in the course of like four or five paragraphs as to each of the referral defendants, are simply allegations of the way the regulations work or the way that hospice works with pejorative adjectives and conclusory labels added to them. With respect to JSA and Sunrise, for example, there's a reference to the fact that the patients are referred and they receive services under hospice that are not then covered by the referring agency. That's the way hospice works. And then she says, but that's a kickback because they're able to take off these ineligible patients from their roles. Well, without any allegation about which patients are ineligible, there's no basis for us to defend and there's no basis on which the court can conclude that there was any kickback. So there's no indicia of reliability there at all. Your Honor asked about leave to replead. We think it's very significant, again, that with respect to the referral defendants, three of them aren't even added until after the United States has declined to intervene. These are afterthoughts. It's six years after the case has been pending, after she's already amended three times. But importantly, by that time, what she does know is that the United States is not intervening and that she's going to have to carry this on herself. She has every incentive to put everything she has in that complaint. And she adds very little, if anything, in terms of substantive allegations against the referral defendants. And I think Adkins really does stand for the proposition that if the relator is going to come and say, oh, but I should have been allowed another time to go at it one more time. There has to be some indication of what the relator would add. There was no, just as in Adkins, there was no motion under 59 or 60 for leave to file an amended complaint. There was no attached proposed amended complaint. And even in the Court of Appeals brief, not a single reference to what factual allegations would be made. I do want to correct one misstatement by counsel for a relator in his oral argument, because he suggests that there are specific patients referred by JSA that are referenced in the complaint. And there is no such allegation. There are no specific patients. It is clear that there's a conclusory allegations that there were ineligible patients that were referred. But there are no specific patients that are referenced. And with respect to the one patient that was identified, the one who went to Europe for three months. First, of course, to be in hospice means only that your life expectancy is six months. It doesn't mean that you're not able to enjoy the few weeks that you have remaining and that you wouldn't be able to go and take advantage of that. And of course, there is no reason to believe that this relator has any access to billing to know whether LifePath would have billed for the services while the patient was out of the country. There's a conclusory assertion to that effect. But there's no indicia of reliability that she has any insight into whether that would have happened or not. With respect to the referral defendants, it's enough to say that there's no allegation that that patient was referred by them at all. There is simply no basis to believe that this outsider has any insight into any of the referral defendants practices or policies that would allow her to say with reliability that there were false claims made with reference to their patients. The court has said that where someone is an outsider, the standard is hard. But that is appropriate because of the reputational damage that a defendant has when somebody just throws out an allegation of fraud, hoping that with discovery, they may be able to find something to prove it. If there are no questions, thank you, Your Honors. Mr. Finley. Thank you. First, with respect to a couple things the Council for the Hospice Defendants said, it was stated that there's never been a relator in a position like Ms. Chase. That's not true. Two of the four cases he was referring to involved nurse practitioners, the providers of the actual services who were the relators. The Hill v. Morehouse case and Mastage were both nurse, excuse me, not Mastage, Walker, were both nurse practitioners. And the basis, the indicia of reliability for their allegations that false claims were submitted were, in one case, participation in weekly meetings about the patients, which we allege in the complaint. And Ms. Chase did participate in as part of the interdisciplinary group that's servicing the patients where they discuss all the Medicare documentation they're having to provide, including on Medicare forms. Most of these things are actually done on Medicare forms. And the other one was simply a conversation with their supervisor. And we also cited, I'll note along the same lines, the Presser case from the Seventh Circuit, which was also a nurse practitioner case. And in that case, the relator, the sole basis of her allegation of any claims being submitted was a conversation with the owner of the company, the clinic, who basically said, ah, virtually all of our patients are Medicare patients. That was it. But, I mean, just going back to that paragraph that I asked your colleague about the patient who was out of the country. I mean, there's no allegation in the complaint about how your client knew that or gathered that information. How she knew that is because she's in the meetings where they're discussing the patients. And these things are being brought up and they're being told to continue to keep them in the system, keep them on the roll, recertify them, hold them to the very end. And I guess their other point about that was she would have no access to the billing records for that patient. She wouldn't. It's true that she wouldn't have access. She's not in the accounting department. She's not preparing the actual form that gets submitted in that lists the roster. But you say that's not necessary. Yes, and that's pretty clear because that was true of the relators in each of Hill, Mastidge, Walker, and Matheny as well. And so that's pretty clear. And when you think about it, with a company of any size, that's a really onerous requirement. Because you're not going to have somebody who is out there providing the services that knows that the eligibility is being fudged, that the documents are being falsified. And the person that's in there pushing the button, sending the actual bill. Can I ask just on the amendment question? Yes. Is there somewhere in the record where you gave the district court information about what your amendment would say? We didn't articulate precisely. I may have stated generally that we would flesh out certain details. And what we could do is flesh out details of these specific meetings. Like who was there, when did they happen? About discussing the patients. We could also flesh out details about the audit that we mentioned in the complaint by the Medicare fiscal intermediary. Which kind of begs the question, if claims weren't submitted to Medicare, what is the fiscal intermediary auditing? But we can flesh out details on that in terms of the specific claims and patients that were taken issue with and what was done. But that's not, I mean, you didn't set that out for the district court. No, ma'am. Thank you. Thank you. The court will be in recess until tomorrow morning at 9.